UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANTONIO DELCASTILLO,

    Plaintiff,

    v.

CITY AND COUNTY OF SAN FRANCISCO, et al.,

    Defendants.
_____/

No. C 08-3020 PJH

**ORDER GRANTING SUMMARY JUDGMENT IN PART AND DENYING SUMMARY JUDGMENT IN PART**

Defendants' motion for summary judgment came on for hearing on April 14, 2010 before this court. Plaintiff, Antonio DelCastillo ("plaintiff" or "DelCastillo"), appeared through his counsel, Kenneth Frucht. Defendants City and County of San Francisco, and certain individual defendant San Francisco police officers (collectively "defendants"), appeared through their counsel, Daniel Zaheer. Having read all the papers submitted and carefully considered the relevant legal authority, the court hereby GRANTS in part and DENIES in part defendants' motion for summary judgment, for the reasons stated at the hearing, and as follows.

**BACKGROUND**

This is a section 1983 case.

A.    Background Facts

On July 16, 2007, plaintiff Antonio DelCastillo ("plaintiff" or "DelCastillo") was living part time with his girlfriend Jennifer Botai ("Botai") at 88 Cambridge St. in San Francisco, Ca. At around 7 p.m. that evening, plaintiff and Botai got into a heated argument over plaintiff's misplaced ipod. The argument continued to escalate, however, with the couple trading profane insults, and some property destruction occurring. At some point during the

argument, plaintiff grabbed Botai, although he testified that he did not hit her. See Declaration of Daniel Zaheer ISO Defs. MSJ ("Zaheer Decl."), Ex. B at 148:24-155:6 (DelCastillo Depo.).

Plaintiff phoned 911. See Zaheer Decl., Ex. B at 152:1-3. He told the operator to "send the police here fast." See Zaheer Decl., Ex. G (CD containing 911 recordings). The operator noted (as can be heard on the recording) a woman screaming in the background. Id., Ex. C at 28:14-15. Shortly thereafter, seven police officers responded, and arrived at plaintiff's residence in order to investigate the 911 call. Prior to arriving, the officers had been notified via dispatch that there was a prior history of domestic violence related fights at the house. See id., Ex. C at 40:20-41:8. When the officers arrived, plaintiff invited them inside the house, where they interviewed plaintiff and Botai separately. See Zaheer Decl., Ex. B at 159:10-23, 336:18-337:21; id., Ex. C at 27:6-8; id., Ex. D at 16:16-17:20. The officers informed plaintiff of his right to file for a restraining order, but plaintiff indicated he did not want to go obtain one. Ultimately, the officers asked Botai to leave, and she departed. See id., Ex. B at 163:20-22, 164:1-19.

Approximately a half hour later, plaintiff testified that he was watching television in his living room when he heard Botai return, knocking and kicking the door to his house. See Zaheer Decl., Ex. B at 167:17-169:4, 195:21-196:5. She had returned because she had forgotten her money inside plaintiff's house – which she needed for bus fare. See id., Ex. C at 39:4-40:5, 43:14-25, 46:3-9, 53:1-3. In response to Botai's knocking and kicking, plaintiff called 911 a second time. See id., Ex. B at 169:14-170:6. As part of his conversation with the dispatcher, plaintiff stated "send the police here because I'm going to fuck [Botai] up." Zaheer Decl., Ex. G; id., Ex. B at 175:9-12, 183:7-10. Plaintiff also stated, prior to hanging up, "right now, right away. Fast. I'm tired of this shit." See id., Ex. B at 175:18-19.

Two minutes after making this second 911 call, plaintiff called 911 a third time. See Zaheer Decl., Ex. G. Plaintiff testified that he called again because he was impatient and

1  wanted the police to arrive more quickly.  See id., Ex. B at 186:3-4, 187:6-7.  In response to
2  plaintiff's latter two calls, six of the seven officers who had responded to plaintiff's home
3  after his first 911 call earlier in the evening, responded again.  See Zaheer Decl., Ex. C at
4  90:17-91:18.  The 911 dispatch officer had indicated to the officers that plaintiff was irate.
5  See id., Ex. D at 84:22-85:5.

6       When the officers arrived at plaintiff's home, officers Robert Kobold ("Kobold") and
7  Robin Odum ("Odum") met Botai in front of plaintiff's house, where she told the officers that
8  she had forgotten her money inside the house, and needed it for bus fare.  See Zaheer
9  Decl., Ex. C at 38:4-40:5, 43:14-25, 46:3-14; id., Ex. D at 28:9-11, 29:4-9.  The officers
10 agreed to conduct a stand-by, and to remain on the scene and assist Botai in obtaining her
11 property.  See id.  The officers went to plaintiff's door, knocked and announced their
12 presence.  Plaintiff yelled from inside, and then opened the door and invited the officers in.
13 Id., Ex. B at 196:19-20, 202:15-21, 337:18-21; Ex. C at 46:19-47:15; Ex. D at 30:9-10.

14      At this point, the parties' version of events diverges.  Plaintiff has one version, and
15 defendants have another:

16      **Plaintiff's version**.  Plaintiff testified that after he opened the door and invited the
17 officers in, the officers immediately rushed in and tackled him onto the sofa.  See Zaheer
18 Decl., Ex. B at 202:6-14, 205:17-18, 218:21-23, 222:6-11, 223:1-9, 226:9-15, 337:18-21.
19 Plaintiff does not recall who grabbed him or how the officers got him to the ground – only
20 that he ended up on the sofa with arms and legs restrained.  See id. at 215:24-216:7,
21 219:6-11, 222:6-11, 223:5-9.  Plaintiff admits that he "tr[ied] to get out of" the officers' grasp
22 when on the sofa and tried "not to let them grab" him.  Id. at 218:23, 222:8, 226:19-227:21,
23 228:6-8, 234:13-16.  During the struggle, plaintiff testified that one officer punched him
24 once in the face, and that an officer Jason Gallagher ("Gallagher") choked him until he fell
25 unconscious.  Zaheer Decl., Ex. B at 225:18-25, 228:9-18, 231:21-24.

26      **Defendants' version**.  Two of the defendant officers here – Kobold and Odum –
27 testified that plaintiff initially opened the door only a foot, and when he did, he was in a
28

3

hysterical state. See Zaheer Decl., Ex. D at 29:11-25, 30:22-32:1. He appeared red-faced, sweating, agitated, and belligerent. See id., Ex. C at 48:5-50:25, 54:15-20, 64:13-17; id., Ex. D at 32:10-33:8, 46:2. Plaintiff was screaming profanity and incoherent statements at the officers. Id. The officers believed plaintiff was suffering from a psychotic break, or was under the influence of narcotics. Zaheer Decl., Ex. C at 48:7-10, 50:22-25; Id., Ex. D at 85:18-24. Kobold told plaintiff that Kobold needed to interview plaintiff about his 911 call, and to check on plaintiff's welfare. Id., Ex. D at 33:10-18; Ex. C at 58:13-24. Plaintiff then opened the door all the way, stepped back into the house, and said, "go ahead and look at me, I'm fine." Id., Ex. D at 43:14-23, 45:13-17. Kobold then stepped into the doorway in order to examine plaintiff, but as he stepped into the doorway, plaintiff slammed the door on Kobold's right leg and right side, pinning the officer between the door and door frame. See Zaheer Decl., Ex. C at 59:2-25, 73:8-21; id., Ex. D at 60:5-15, 62:23-63:2, 71:10-17. Plaintiff pressed his weight into the door, but the officers on the other side pushed back and freed Kobold. Id. Inside, the officers then told plaintiff he was under arrest for battery on a police officer and instructed plaintiff to put his hands behind his back. Zaheer Decl., Ex. C at 73:23-25, 74:1-8, 78:20-22, 79:1-80:20, 82:15-85:21; id., Ex. D at 71:18-22, 71:22, 73:13-79:18, 80:11-81:4. Plaintiff failed to comply. The officers then attempted to take control of plaintiff's arms and handcuff him, but plaintiff resisted, and screamed at the officers. See id. The officers – including officer Gallagher – then attempted to control plaintiff. Id. A scuffle ensued, plaintiff fell backwards onto Officer Gallagher such that plaintiff was laying on top of Gallagher on the sofa in plaintiff's house. Id. The officers ultimately subdued plaintiff and handcuffed him. Id.

The officers testified that there was never a punch to plaintiff's face, and that although Gallagher's arm did inadvertently contact plaintiff's neck during the struggle, no chokehold was applied and plaintiff never lost consciousness. Zaheer Decl., Ex. C at 85:1-9; Ex. D at 79:22-25.

These are the competing versions regarding the actual arrest. After the takedown

4

and arrest, the parties' stories are once again aligned. The parties agree that plaintiff stated that he was having trouble breathing, and the officers therefore called an ambulance to plaintiff's residence. Zaheer Decl., Ex. B at 248:5-6; Ex. C at 85:15-86:4. The paramedic found no evidence of trauma or injury, and plaintiff reported that he had not lost consciousness. See id., Ex. E at 24:2-11, 25:16-29:6. Plaintiff was taken to San Francisco General Hospital, where the admitting physician found no indicators of injury. Id., Ex. F at 33:9-13, 34:7-18. Plaintiff then left the hospital against medical advice. Id. at 43:22-24.

When plaintiff finally returned to 88 Cambridge St., he claims his medications were missing. See Zaheer Decl., Ex. B at 243:15-244:18. Plaintiff does not know what happened to them. Id.

B.   The Instant Action

On June 19, 2008, plaintiff filed the instant action against defendants City and County of San Francisco ("the City"); and individual San Francisco police officers Kevin Chin ("Chin"), Jason Gallagher ("Gallagher"), Kevin Horan ("Horan"), Robert Kobold ("Kobold"), Steven Needham ("Needham"), Robin Odum ("Odum"), Tyler Repelato ("Repelato"), and Wayman Young ("Young").

The complaint alleges two incidents: one taking place, as described above, on July 16, 2007. Complaint, ¶¶ 16-21. The second allegedly took place on December 16, 2007. See Complaint, ¶¶ 22-24. In connection with the former incident, plaintiff makes allegations regarding the conduct of Officers Odum and Kobold. In connection with the December 16, 2007 incident, plaintiff makes specific allegations in connection with Officers Needham and Chin. However, on Tuesday, April 7, 2010, the parties stipulated to plaintiff's dismissal with prejudice of those claims stemming from the December 16, 2007 incident. Thus, all claims against officers Needham and Chin are also dismissed with prejudice.

Plaintiff alleges five causes of action against defendants: (1) excessive force, pursuant to 42 U.S.C. § 1983; (2) unreasonable search and seizure, pursuant to 42 U.S.C. § 1983; (3) battery; (4) intentional infliction of emotional distress; and (5) a Monell claim

5

against the City, pursuant to 42 U.S.C. § 1983. See generally Complaint.

Defendants the City and the individual officer defendants now seek partial summary judgment, and ask the court to grant summary judgment on all claims except for plaintiff's excessive force claim.

**DISCUSSION**

A. Legal Standard

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c). Material facts are those which may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id. The court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In section 1983 cases such as the one here, the qualified immunity issue is particularly well-suited for disposition on summary judgment. See, e.g., Martin v. City of Oceanside, 360 F.3d 1078, 1081 (9th Cir. 2004).

B. Legal Analysis

Defendants' motion requests the court to enter summary judgment with respect to all asserted claims, with the general exception of the excessive force claims under federal and state law. Specifically, defendants seek summary judgment as to: (1) plaintiff's claim that defendants entered his home unlawfully in violation of the Fourth Amendment (second cause of action); (2) plaintiff's claim that defendants stole his medications (second cause of action); (3) plaintiff's claim for unlawful search and seizure (second cause of action); (4) plaintiff's first and third causes of action for excessive force and battery against Officer

6

Odum; (5) all federal claims against the City (fifth cause of action); and (6) plaintiff's fourth cause of action for intentional infliction of emotional distress.

As a preliminary matter, and prior to analyzing the substance of the parties' arguments, the court takes a moment to comment on the overall sufficiency of plaintiff's evidence in opposition to defendants' motion. Generally, while plaintiff argues the existence of disputed issues of fact in relation to the arguments before the court, plaintiff's brief fails to include affirmative citations to the discovery record in the case – e.g., deposition testimony or other discovery responses – that would allow plaintiff to demonstrate that disputed facts exist. Indeed, plaintiff has submitted a mere two items in connection with his opposition brief: a declaration submitted by plaintiff himself, and an attorney declaration containing an attached excerpt to the deposition testimony of Officer Kobold (introduced in support of an isolated fact). See generally Declaration of Antonio DelCastillo ISO MSJ Opp. ("DelCastillo Decl."); Declaration of Kenneth Frucht ISO MSJ Opp. ("Frucht Decl."). It bears noting, however, as defendants point out, that "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir.1991). Thus, to the extent that plaintiff exclusively cites to his own declaration in support of the existence of material disputes of fact, and in contravention of his existing deposition testimony, the later-filed declaration is of limited effect.

With this in mind, the court now turns to the substantive issues before the court.

1. <u>Unlawful Entry in Violation of Fourth Amendment (Second Cause of Action)</u>

Defendants target plaintiff's second cause of action alleging unreasonable search and seizure pursuant to 42 U.S.C. § 1983 on numerous grounds, the first of which is that, to the extent plaintiff suggests that defendants are liable for unlawful entry based on defendants' arrest of plaintiff at his doorway entry, such a claim fails. See, e.g., U.S. v. Santana, 427 U.S. 38, 42 (1976) and U.S. v. Vaneaton, 49 F.3d 1423, 1426 (9th Cir. 1995). Both Santana and Vaneaton set forth the general proposition that where a defendant

7

standing within the frame of his or her doorway as officers approach retreats into the vestibule of his or her home where the officers follow and effect an arrest, there is no constitutional violation, provided "an otherwise proper arrest by officers who pursued [the defendant] inside." See id.

As clarified by plaintiff's counsel at the hearing on the instant motion, however, plaintiff has not pled any claim premised on defendants' unlawful entry into plaintiff's home, separate and apart from the claim of false arrest, in violation of plaintiff's Fourth Amendment rights. This being the case, defendants' motion on this ground – which defendants' counsel conceded has been made in an abundance of caution due to uncertainty over the nature of the Fourth Amendment claims being asserted by plaintiff – is both premature and unnecessary. As such, it is hereby DENIED.

    2.    <u>Plaintiff's "Seized" Medications (Second Cause of Action)</u>

Defendants also target plaintiff's second cause of action alleging unreasonable search and seizure pursuant to 42 U.S.C. § 1983, to the extent plaintiff's claim is premised on defendants' unlawful seizure of plaintiff's medication. Plaintiff's opposition brief confirms that plaintiff is, in fact, alleging that defendants committed an unlawful search and seizure in connection with plaintiff's medications, and further argues that triable issues of fact exist regarding plaintiff's claim. See Opp. Br. at 4:22-23.

The undisputed facts here not only fail to demonstrate that defendant officers took plaintiff's medication pursuant to any unlawful search, they in fact demonstrate the opposite: i.e., that defendants officers did *not* take plaintiff's medication. Officer Odum testified: that it was the paramedics, and not any police officer, who retrieved plaintiff's medications from plaintiff's bedroom; that plaintiff's medications were not taken to the police station; and that officers never take medications from individuals. See Zaheer Decl., Ex. C at 87:16-23, 88:6-11. Plaintiff himself testified: that it was *not* a police officer who was physically holding his medications at the time the arrest occurred, and during plaintiff's subsequent physical examination; and that he had no idea who actually took his

8

medications. See id., Ex. B at 250:23-251:6, 244:4-18. Even plaintiff's concurrently filed declaration, moreover, does not say that any police officer took his medication: it states only that when plaintiff returned home from the hospital post-arrest, "a box of [his] medications was missing." See DelCastillo Decl., ¶ 10.

All of which establishes without any dispute of fact that, whatever happened to plaintiff's medications, they were not in the possession of any police officer, and were not taken by any police officer. As such, and to the extent plaintiff's second cause of action is premised on grounds that defendants' unreasonably seized plaintiff's medications during the incident in question, summary judgment is hereby GRANTED in defendants' favor.

       3.     Unlawful Detention/Arrest (Second Cause of Action)

Defendants' final challenge to plaintiff's second cause of action alleging unreasonable search and seizure pursuant to 42 U.S.C. § 1983 is to the heart of plaintiff's claim: i.e., that defendants unlawfully detained and arrested plaintiff in violation of his Fourth Amendment rights. See Dubner v. City and County of San Francisco, 266 F.3d 959, 965 (9th Cir. 2001)(a claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification). Generally, defendants argue that summary judgment in their favor on plaintiff's false arrest claim is appropriate, since the undisputed material facts show that the officers had probable cause to detain and/or arrest plaintiff for any number of violations, including violations of: the Cal. Welf. & Inst. Code § 5150; Cal. Penal Code § 422 (statute prohibiting criminal threats); Cal. Penal Code § 273.5 (statute prohibiting domestic violence); Cal. Penal Code §§ 148.3 and 148.5 (statute prohibiting false report to police); and Cal. Penal Code § 148 (statute prohibiting resisting arrest). See Pierson v. Ray, 386 U.S. 547, 555-57 (1967)(an officer not liable for damages based on a claim of false arrest if there was probable cause to make the arrest).

Probable cause to arrest exists when, under the totality of the circumstances known to the arresting officer, a prudent person would conclude there is a fair probability that the

arrestee had committed, or was committing, or was about to commit, a crime. See Beier v. City of Lewiston, 354 F.3d 1058, 1065 (9th Cir. 2004); see also Michigan v. DeFillippo, 443 U.S. 31, 37 (1979). Where probable cause exists at the time of an arrest, the arrest does not violate the Constitution even if the charges are later dropped or the person arrested is subsequently acquitted. DeFillippo, 443 U.S. at 36; Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir. 1995). Although the plaintiff bears the burden of proof on the issue of unlawful arrest, he can make a prima facie case simply by showing – as is the case here – that the arrest was conducted without a valid warrant. At that point, the burden shifts to the defendant to provide some evidence that the arresting officers had probable cause for a warrantless arrest. The plaintiff still has the ultimate burden of proof, but the burden of production falls on the defendant. See Dubner, 266 F.3d at 965. "This minimal burden shifting forces the police department, which is in the better position to gather information about the arrest, to come forward with some evidence of probable cause." Id.

     As an initial matter, the court is unpersuaded that the evidence in the record supports a finding of probable cause to arrest pursuant to Cal. Penal Code §§ 148.3 and 148.5, or Cal. Penal Code § 148. As proof of the former, defendants suggest that plaintiff's call to the 911 dispatcher indicating that his "ex-girlfriend [was] trying to break into [his[ house," when contrasted with Botai's statement to Officer Odum at the scene that she had only been "knocking" on plaintiff's door in order to retrieve her property from inside the house, is sufficient to justify a finding a probable cause to believe that plaintiff had falsely reported an attempted break in to police, violating Penal Code §§ 148.3 and 148.5. Defendant submits no evidence, however, that establishes, let alone suggests, that plaintiff's phone call to the police was based on a knowingly false belief that plaintiff was attempting to break in to plaintiff's house. Both Cal. Penal Code §§ 148.3 and 148.5 require proof that an individual submitted knowingly false reports before liability may attach.

     As for Penal Code § 148, this statute imposes criminal liability on "person[s] who

10

willfully resist[], delay[], or obstruct[] any public officer, peace officer, or an emergency medical technician... in the discharge or attempt to discharge any duty...". Defendants argue that plaintiff's admissions regarding the active struggle that took place with police officers prior to his arrest support a finding that defendants had probable cause to arrest plaintiff for willfully resisting, delaying, or obstructing defendant officers in the performance of their duties. As defendants acknowledge, however, the testimony by both parties surrounding the actual circumstances and nature of plaintiff's arrest by the officers is disputed. See, e.g., Def. MSJ Br. at 4:21-6:10. As such, defendants cannot meet their burden in coming forward with sufficient evidence to demonstrate that probable cause to arrest for violation of Penal Code § 148 existed.

This leaves the court with the remaining – and most likely – asserted sources to support a finding that probable cause to arrest existed: Welf. & Inst. Code § 5150 (permitting officers to detain/arrest a person who, as a result of mental disorder, is a danger to himself or others); Cal. Penal Code § 422 (statute prohibiting a person from threatening serious bodily injury if the threat is communicated in such a manner that it will be carried out and causes the victim to fear for his or her safety); and Cal. Penal Code § 273.5 (statute prohibiting an individual from committing a battery on a cohabitant or a former cohabitant).

As to the first statute, "probable cause exists under section 5150 if facts are known to the officer 'that would lead a person of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person detained is mentally disordered and is a danger to himself or herself.'" See Bias v. Moynihan, 508 F.3d 1212, 1220 (9th Cir. 2007); see also People v. Triplett, 144 Cal. App.3d 283 (1983). Here, defendants' contend that, when they arrived at plaintiff's house for the second time, and plaintiff first opened the door to his house, they observed that plaintiff appeared red-faced, sweating, agitated, and belligerent. See id., Ex. C at 48:5-50:25, 54:15-20, 64:13-17; id., Ex. D at 32:10-33:8, 46:2. Plaintiff was screaming profanity and incoherent statements at the officers. Id. The officers

11

believed plaintiff was suffering from a psychotic break, or was under the influence of narcotics. Zaheer Decl., Ex. C at 48:7-10, 50:22-25; Id., Ex. D at 85:18-24.  Plaintiff, however, tells a different story, as he states that he was never given a chance to do anything other than answer the door, as the defendant officers immediately rushed him and began to wrestle with him immediately.  See Zaheer Decl., Ex. B at 202:6-14, 205:17-18, 218:21-23, 222:6-11, 223:1-9, 226:9-15, 337:18-21.  Thus, there is ultimately a material dispute of fact as to whether defendants were able to learn any facts that would lead them to believe plaintiff was a danger to himself or others, as a result of a mental disorder.  In this vein, plaintiff is correct that, regardless whether plaintiff was on psychotic medication at the time, or was suffering from psychological conditions, there is no evidence that defendants were aware of these facts regarding plaintiff's mental disorders, at the time they appeared and arrested plaintiff.

As to the second statute, Cal. Penal Code § 422 imposes liability on any person who "willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement" be conveyed to the other person in such a manner that "causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety...".  In order to find that a defendant has committed the crime of criminal threat under the statute, five constituent elements must be established:  (1) that defendant willfully threatened to commit a crime resulting in death or great bodily injury to another person; (2) that defendant made the threat with specific intent that it be taken as a threat; (3) that the threat was so unequivocal, unconditional, immediate, and specific as to convey to the person threatened a gravity of purpose and immediate prospect of execution of the threat; (4) that the threat actually caused the person threatened to be in sustained fear for his or her own safety or that of his or her immediate family; and (5) that the threatened person's fear was reasonable under the circumstances. See People v. Maciel, 113 Cal. App. 4th 679 (2003).

Here, defendants do not come forward with evidence satisfying all five elements.  It

is undisputed that: plaintiff made a first call requesting that police come to his house quickly; prior to arriving, the officers had been notified via dispatch that there was a prior history of domestic violence related fights at the house; that, when plaintiff called 911 a second time, he told the dispatcher, "send the police here because I'm going to fuck [Botai] up," and prior to hanging up said, "right now, right away.  Fast.  I'm tired of this shit;" that plaintiff then called 911 a third time, because he wanted the police to arrive more quickly; and that the 911 dispatch officer also indicated to the officers that plaintiff was irate.  See Zaheer Decl., Ex. G; id., Ex. B at 175:9-19, 183:7-10.  These facts may be sufficient to establish that plaintiff was in the process of threatening Botai.  However, these facts are not sufficient to establish that plaintiff ever communicated the threat *to Botai herself*, such that the communication caused Botai to be in "sustained fear" for her own safety or that of her immediate family.  As such, defendants have not satisfied their burden to come forward with evidence satisfying the statute's requirement that any alleged criminal threat be communicated to "another person" in the manner proscribed by the statute, such that an affirmative finding of probable cause may be made at this juncture.

      Finally, as to the third statute urged upon the court by defendants, Cal. Penal Code § 273.5, it prevents any person from "willfully inflict[ing] upon a person who is his or her spouse, former spouse, cohabitant, former cohabitant... corporal injury resulting in a traumatic condition," where "traumatic condition" is defined as "a condition of the body, such as a wound or external or internal injury, whether of a minor or serious nature, caused by a physical force."  Defendants here argue that, in view of the history of domestic violence at the address and between the parties (a fact which was known to the responding officers), and plaintiff's 911 calls containing clear statements by plaintiff regarding his desire to possibly harm Botai, probable cause to arrest existed based on the officers' belief that plaintiff was *about to commit* a violation of the statute.  The court, however, is unpersuaded that defendants have demonstrated sufficient facts to warrant the entry of summary judgment as to this issue.  While technically correct that probable cause to arrest may be

13

established based on the existence of facts suggesting that a suspect is about to commit an offense, here there are simply not enough facts in evidence to suggest that any violation of Penal Code § 273.5 was imminent. There is no evidence submitted by defendants, for example, demonstrating that Botai suffered any wound or external or internal injury. More importantly, at the time that the defendant officers arrested plaintiff, there is no evidence that even suggests that plaintiff was within sufficient physical proximity to Botai such that a violation of the statute could be imminent. Indeed, the undisputed testimony states that when the officers arrived at plaintiff's home prior to the arrest, plaintiff was inside the house, while Botai was outside the house. See Zaheer Decl., Ex. C at 39:4-40:5, 43:14-25, 46:3-14; id., Ex. D at 28:9-11, 29:4-9. This makes sense, moreover, considering that plaintiff's reason for calling the police a second and third time that evening was due to Botai's efforts to gain access to plaintiff's residence once again, and plaintiff's determination that she should not regain such access. All of which suggests, if anything, that plaintiff was not in the process of committing or even imminently about to commit, any violation of section 273.5.

In sum, and based on the foregoing discussion, the court concludes that triable issues of fact exist with respect to the existence of probable cause to arrest plaintiff, pursuant to Cal. Welf. & Inst. Code § 5150, Cal. Penal Code § 422, and Cal. Penal Code § 273.5, and summary judgment is accordingly DENIED on this basis, with respect to plaintiff's second claim for relief.

Defendants argue that, even if probable cause did not exist, qualified immunity applies to the defendant officers' actions. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 129 S. Ct. 808, 815 (2009)(citation and quotations omitted).

A court considering a claim of qualified immunity must determine whether the

14

plaintiff has alleged the deprivation of an actual constitutional right and secondly, whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. See Pearson, 129 S. Ct. at 818 (overruling the sequence of the two-part test that required determination of a deprivation first and then whether such right was clearly established, under Saucier v. Katz, 533 U.S. 194, 201 (2001)).  The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. Id. (noting that while the Saucier sequence is often appropriate and beneficial, it is no longer mandatory).

The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. See, e.g., Pearson, 129 S. Ct. at 822 (concluding that officers were entitled to qualified immunity because their conduct was not clearly established as unconstitutional, as the doctrine upon which the officers relied had been generally accepted by the lower courts though not yet ruled upon by their own federal circuit).  If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate. Saucier, 533 U.S. at 202.

Here, taking the totality of circumstances into account, the court concludes that there are material disputes of fact as to whether the deprivation of an actual constitutional right occurred and furthermore, whether such right was clearly established such that it would be clear to a reasonable officer whether defendants' conduct was lawful under the circumstances apparent from the record.

In sum, summary judgment as to plaintiff's second claim for relief, both with respect to the existence of probable cause to arrest plaintiff pursuant to any of the statutes discussed herein, and defendant officers' qualified immunity in undertaking plaintiff's arrest, is hereby DENIED.

   4.  Excessive Force/Battery as to Officer Odum (First and Third Causes of Action)

Defendants' argument in connection with plaintiff's first and third causes of action – alleging excessive force and battery, respectively – is limited to plaintiff's claim against defendant Officer Odum alone. Defendants note that defendant Odum testified that there was no room for her to assist in the actual arrest of plaintiff, that she did not testify that she used any force on plaintiff, and that plaintiff, for his part, cannot recall that any female officer took him to the ground or restrained him. See Zaheer Decl., Ex. C at 79:1-85:21; Ex. B at 212:5-213:3. Since this evidence presents no basis for a reasonable inference that defendant Odum was one of the officers who participated in plaintiff's arrest, defendants argue that summary judgment as to the excessive force/battery claims against her is appropriate. Plaintiff, in opposition, contends that because he was face down most of the time he was allegedly being assaulted, he has "no recollection" of who participated in the purported assault, and furthermore, that the inability to specifically recollect the officers acting against him poses no impediment to his claim.

On balance, the court concludes that a material dispute of fact exists with respect to defendant Odum's participation in the events surrounding plaintiff's arrest. Notably, defendant submits no testimony from defendant Odum in which she states that she affirmatively did *not* use any force on plaintiff. Plaintiff, by contrast, testified that he "[could not] remember" whether a female officer grabbed him or forced him to the ground amidst the events occurring, and that he "[couldn't] tell" whether a female officer rushed him, although "all" the officers were in his house. See Zaheer Decl., Ex. B at 212:5-213:3. Thus, it is unclear, and far from undisputed, whether defendant Odum actually participated in the events surrounding plaintiff's arrest, as currently in evidence.

Accordingly, summary judgment with respect to plaintiff's section 1983 excessive force claim as to defendant Odum only is DENIED, and for the same reasons, plaintiff's third cause of action alleging a state claim for battery against defendant Odum is also DENIED. See Edson v. City of Anaheim, 63 Cal. App. 4th 1269, 1271-75 (1998)(state law claim of battery by police officer considered co-extensively with federal claim under Fourth

1 Amendment).

### 5. Monell Claim Against the City (Fifth Cause of Action)

Defendant seeks summary judgment as to plaintiff's fifth claim, on grounds that plaintiff has offered no evidence of a policy or custom that was the motivating force behind defendants' conduct, as required for a section 1983 Monell claim to be viable against a municipality. Plaintiff, in his opposition brief, and at the hearing on the instant motions, conceded his lack of evidence in support of the Monell claim, and has therefore agreed to dismiss the claim.

Accordingly, the Monell claim is hereby DISMISSED with prejudice.

### 6. IIED claim (Fourth Cause of Action)

Finally, defendants seek summary judgment in connection with plaintiff's fourth cause of action alleging intentional infliction of emotional distress. The elements of a successful claim are: (1) extreme and outrageous conduct by the defendant; (2) plaintiff's severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by defendant's outrageous conduct. See Christensen v. Superior Court, 54 Cal. 3d 868, 903 (1991). Defendants specifically assert that, regardless whether plaintiff is ultimately able to support his intentional infliction of emotional distress claim with a successful excessive force claim (as plaintiff alleges), plaintiff nonetheless lacks evidentiary support demonstrating his "severe" or extreme emotional distress, thereby dooming his claim.

Defendant is correct. Plaintiff has not come forward with any evidence demonstrating his severe or extreme emotional distress. As defendants concede, plaintiff has testified that he is angry with the police, experiences stress and mood swings at times, and trouble sleeping at night at times. See Zaheer Decl., Ex. B at 91:3-93:24, 95:1-5, 105:11-13. However, this is insufficient to satisfy the "severe" or "extreme" degree of emotional distress required in order to prove a valid claim. See Potter v. Firestone Tire & Rubber Co., 6 Cal. 4th 965, 1004 (1993)(noting that in intentional infliction actions, recovery

is allowed only for "severe or extreme emotional distress," meaning "'emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it'"); see also e.g., Hughes v. Pair, 46 Cal. 4th 1035, 1051 (2009)("plaintiff's assertions that she has suffered discomfort, worry, anxiety, upset stomach, concern, and agitation as the result of [defendant's alleged actions] do not comprise 'emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it.'"). Plaintiff, furthermore, has failed, either in his opposition or at the hearing on the matter, to rebut defendants' showing with any evidentiary showing of his own.

In short, given the undisputed and unrebutted evidence regarding the nature and degree of emotional distress suffered by plaintiff as a result of defendants' alleged excessive force, plaintiff has failed to come forward with sufficient evidence to establish a triable issue of fact with respect to the "severe and extreme" element of his emotional distress claim.

Accordingly, the court hereby GRANTS defendants' motion for summary judgment, with respect to plaintiff's claim for intentional infliction of emotional distress.

C.  Conclusion

For the foregoing reasons, the court hereby GRANTS defendant's motion for summary judgment in part, and DENIES it in part, consistent with the foregoing.

The parties are referred by separate order for a mandatory settlement conference.

**IT IS SO ORDERED.**

Dated: May 3, 2010

_____
PHYLLIS J. HAMILTON
United States District Judge